JOHN B. HOWELL: IN THE MATTER OF FREE FERRIES.

1. COUNTY COURT JURISDICTION: *Ferries.*

A county court composed of the county judge and justices of the peace has no jurisdiction to establish ferries. It can only levy county taxes and make appropriations for county expenditures; and the report of commissioners appointed by such court, of the letting out of a free ferry established by it, and taking bonds of the ferryman, made to a subsequent court composed of the county judge only, is but the report of a private citizen; and the confirmation of the report and approval of the bonds by the last court without an order expressly establishing the ferry, does not establish it.

2. FREE FERRIES: *Power of county court to establish.*

County courts have power to establish free ferries; but not at, or within, the prohibited distance of, the licensed ferry of another.

APPEAL from *Yell* Circuit Court.
Hon. W. D. JACOWAY, Circuit Judge.

*Clark & Williams*, for appellants:

Banks of streams can not be taken for ferries, without compensation to owner.  3 *Kent's Com. (Mar.)*, *439, et seq.; Bowman v. Brumley*, 2 *McLean*, 376, *and especially p.* 385 ; *Jacksonville v. S. and C. Ferry Co.*, 27 *Ind.*, 100 ; *Pipkins v. Wynn*, 2 *Dev. (N. C.) L.*, 402; *Gantt's Digest, sec.* 2904.

County had no authority to establish a free ferry without an act enabling it to do so.  Compensation must be made for property taken.

Petit Jean not navigable.  *Acts of* 1879, *p.* 47.  See also as to compensation, 3 *Kent's Com. (Mar.), p.* 427; *Angell on Water Courses, secs.* 457, 461, 466 ; *Murray v. Menifee*, 20 *Ark.*, 561.

*Boles and Whipple*, contra :

Cited *Gantt's Digest, sec.* 2937.

Petit Jean admitted in this case to be a navigable stream, subject to provisions of *Gantt's Digest, sec.* 2902, *et seq.*

Legislature has power to declare a stream navigable. *Am. Water Co. v. Amsden*, 6 *Cal.*, 446 ; *Baker v. Lewis*, 33 *Pa.*, 301.

Appellant not shown nor admitted to be the owner, nor in possession of the lands.  But it is shown that the ferries were established at *public crossings*.  This makes the water and soil under it a continuous part of the highway.  The question of *compensation* does not arise in this proceeding.

Court could authorize any one to establish ferries at those points on giving bond.  *Gantt's Digest, sec.* 2913.  It acts in this judicially.  *Murray v. Menifee*, 20 *Ark.*, 507, and the right requires annual recognition.  *Bearly v. Norris*, 23 *Ark.*, 517.  It is a creature of the sovereign power.  *Bell v. Clegg*, 25 *Ark.*, 28.  Ownership of the soil does not control.

*Hudson v. Cucro Land and E. Co.* 47 *Texas; Washburne on Real Prop.*, vol. 2, 4th ed., p. 261; *Stork v. Miller*, 3 *Mo.*, 330.

Power to establish *free* ferries embraced in *Art. VII, sec.* 28, *Const. of* 1874.

Sections 2910 to 2922 of Gantt's Digest apply to creation of *toll* ferries, and does not limit the constitutional power to establish free ferries. *Piate & Co. v. Cov. & Cin. Bridge Co.*, 8 *Bush.*, 38.

This is not a case where the ferryman should be required to pay for a license.

STATEMENT.

EAKIN, J.   At a county court for Yell county composed of the county judge and the justices, held on the seventh of October, 1878, it was ordered:   That two free ferries be established in that county, across the Petit Jean river, for the term of one year, from the first day of January next ensuing.   One of them was to be at Danville; and the other at a place called the "Rocky Crossing."   A commissioner then appointed for the purpose, was directed to let out the contract for keeping said ferries, separately, to the lowest bidder, for some amount not exceeding $350 for each, to be paid by the county, quarterly, in county warrants.   He was required to take bonds from the contractors in double the amount of the contract, to obligate them, respectively, to constantly keep good and sufficient boats in good repair; and the banks on each side in good condition, and to have their ferries so attended as to pass all persons, and their horses and other stock, carriages and effects, in safety, and without detention; and to comply with all requirements of the law, regarding public ferries, so far as they apply; except, that they should not be required to run their boats outside the banks of said river.

At the next term of the county court held by the judge

alone on the first Monday, being the sixth day of January, 1879, the commissioner reported: That, after the required notices, he had, on the ninth day of November, 1878, let the keeping of said ferries to the lowest bidder at public auction for the sum of $350 each; the one at Danville to John W. Bungamon, and that at "Rocky Crossing," to H. W. Walker, and that each had executed bonds, which were filed.

Thereupon, John B. Howell filed "his protest and demurrer," which was argued and overruled. The report was confirmed and the bonds approved. Howell then made the proper affidavit and bond, and appealed to the circuit court.

The paper filed by Howell and which, as well as the bonds of Bungamon, and Walker, appears in the transcript from the circuit court, sets up that he claims the lawful possession of the land of both sides of the river, at both crossings, and the ferry privileges, as incidental thereto; that he had run a ferry at Danville two years, and at "Rocky Crossing" four or five; and that he was entitled to a renewal of the privileges at both places from the first of January, 1879. He says they are both public crossings over a navigable stream, and protests, that the county court has no jurisdiction to deprive him of his said franchises. He prays the court to reject the report for want of jurisdiction.

The circuit court affirmed the "judgment and order of the county court." There was no bill of exceptions.

OPINION.

The full court composed of the county judge and justices, had no jurisdiction of the subject-matter. It was a tribunal for the purposes, alone, of levying county taxes, and making appropriations for county expenses. (*Const. of 1874, Art. VII, sec 30.*) Its action was void.

1. COUNTY COURT JURISDICTION: Ferries.

The action of the commissioner, in letting the contracts for keeping up the ferries ; and in taking bonds ; and reporting them to the county court which sat in January, and which had jurisdiction, was that of a private individual, advising the court in effect of certain propositions made by two other citizens to run free ferries, and tendering to it bonds which they had executed for the purpose. The court made no order at all *totidem verbis*, to establish free ferries ; but, against the protest and remonstrance of another citizen, claiming the franchise at both places, simply confirmed the report and approval of the bonds.

If the action were before us collaterally it might, perhaps, be considered, in view of the tenderness with which informalities in county court proceedings are treated, that the order confirming a report would be taken with the report as a substantial decree in accordance with the tenor of the report. Justice might require such construction, to protect rights acquired in good faith. But in fact, such an entry shows no definite decree, and is an error, which should have been corrected on appeal, and the circuit court in trying the matter *de novo* should have itself made a definite order in the matter. It erred in simply affirming the judgment and order of the county court. For error and uncertainty in the proceedings the judgment must be set aside and the cause remanded.

3. FREE FERRIES:

County court has power to establish.

Upon the merits we deem it proper to say that this court does not doubt the power of the county court under the constitution to establish free ferries where it may be done without interference with other franchises, already vested. They may be very important to the internal improvements and local concerns of the county. The appropriations, however, to maintain them should be made by a full court.

Where the franchise has been granted to an individual, however, and obligations imposed upon him in consequence,

which he should be encouraged to perform, and protected in performing, new considerations arise. It requires a considerable expense to prepare and equip a ferry, for the public convenience; and it would be bad policy, if not unjust in the county, to disappoint any reasonable expectations which a ferryman might have in making such preparations. This court held in *Murry v. Menifee*, *20 Ark., 561,* that the franchise being once granted was permanent, and that it was only necessary each year to pay the license. See also, *Brierly v. Norris*, *23 Ark., 514.* There has been no change in the statutes to affect this decision, and it would seem, on principle, that the right of the ferryman to renew his license, should preclude the county court from establishing a ferry of its own, within the distance prohibited for others, or from taking the same crossing. The appellant had a private interest in making the protest, and should have been allowed to prove that he owned the banks on both sides, and had a ferry franchise at each place, which he had a preference right to renew.

. Reverse the judgment, and remand the cause to the circuit court for further proceedings in consonance with this opinion.